AO 106 (Rev. 04/10) Application for a Search Warrant

US DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED

OCT 10 2023

Ronald E. Dowling
By_____
Deputy Clerk

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Cellular device assigned call number (479)335-7166, with IMSI 310410317259336, that is stored at premises controlled by AT&T

Case No. 5:23-cm-43-CDC

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Western____ District of ____Arkansas____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 875(C) | Interstate Communications |

The application is based on these facts:
SEE AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Eli Hobbs, FBI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/10/2023

*Judge's signature*

City and state: Fayetteville, Arkansas

Honorable Christy Comstock, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (479)335-7166, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 310410317259336, THAT IS STORED AT PREMISES CONTROLLED BY AT&T | Case No. _____<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Eli Hobbs, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (479) 335-7166, with International Mobile Subscriber Identity 310410317259336 ("the SUBJECT PHONE"), that is stored at premises controlled by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) and have been since 2022. Simultaneously, I am a detective with the Washington County

Sheriff's Office, located in Fayetteville, Arkansas, and have been employed since 2017. As part of my duties as an FBI TFO, I investigate national security matters related to weapons of mass destruction, domestic and international terrorism. I have received trainings and briefings related to investigative methods and outcomes. During my career, I have conducted numerous investigations resulting in multiple arrests and convictions for various criminal violations.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 875 (Interstate Communication) have been committed, are being committed, and will be committed by John HADLEY. There is also probable cause to search the information described in Attachment A for [evidence, instrumentalities, contraband, or fruits] of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. On August 31, 2004, HADLEY entered military service through the Army as an Infantryman. During his service he was deployed and sustained service-related injuries. HADLEY separated from the Army on May 6, 2009, Under Honorable Conditions (General) due to a pattern of misconduct.

6. Based on my review of reports and records from the United States Department of Veteran's Affairs ("VA"), I know that after HADLEY's separation, he filed for a VA disability rating due to service-related injuries. HADLEY was rated for disability. HADLEY contested his disability rating through a lawyer and his rating was raised to 60%. Ultimately, HADLEY

2

contested the rating again and received 100% disability rating in 2017. HADLEY, however, claimed that he did not receive approximately $80,000 in back pay that he alleges the VA owes him.

7.      The VA began documenting all contact with HADLEY due to his increasingly disruptive behavior. From July 17, 2017, to November 28, 2022 the VA documented eleven criminal and noncriminal encounters at VAs located in Colorado Springs, CO, Salt Lake City, UT, and Fayetteville, AR.

8.      On September 9, 2020, HADLEY became the subject of a full order of protection out of Benton County which does not expire until September 9, 2030. The protection order expressly prohibits HADLEY from receiving or possessing a firearm.

9.      On April 6, 2022, the VA Crisis Line contacted HADLEY in response to a survey he completed on telephone number 479-335-7166. I have reviewed the recording of this call. Each of the three Crisis Line operators who spoke with HADLEY were located in Georgia at the time of the call. HADLEY brought up a VA Compensation and Pension employee (he could not recall her name) and stated, "personally I would like to gouge her fucking eyeballs out rip her fucking jaw off and smack her fucking skull, turn it into tapioca pudding. Maybe that would get the fucking message." After reestablishing the call, which had gotten disconnected, HADLEY restated, "This fucking bitch I really wanted to gouge her fucking eyeballs out, rip her fucking jaw off, and smack her fucking head on her desk until it turned into tapioca pudding. Cause, I'm okay with killing motherfuckers. I've done it a whole lot more for a whole lot less." HADLEY then stated, "Bitch I will fucking kill you." while referring to the compensation and pension employee. HADLEY later stated in the call, "Whoever is in charge of the goddamn VA, I'm about to skull fuck him to death and his who goddamn family. Or her, I don't care. I don't really

give two fucks." "I ain't got shit to go for right now. My kids are gone, my ex-wife is gone, I'm fucking living bankrupt." Hadley stated he has been to the Seattle VA, Lakewood VA, Atlanta VA, Little Rock VA, Fayetteville VA, and the Colorado Springs VA. The call operator asks if HADLEY still has a lawyer. HADLEY responded, "No! I have a fucking .40 and a 9 and a K-Bar and the …inaudible… and will to fucking kill. That's where I'm at right now. I'm at the precipice, y'all are at the precipice. I'm okay with killing and dying. Motherfuckers paid me lots of goddamn money for it and I earned lots of fucking medals over it." HADLEY stated, "If she wants to die so fucking bad, next time she comes and picks up her fucking kids from my pizza shop I'll fucking shoot her. She wants to die so fucking bad, I'll hook her the fuck up. I don't care. It doesn't hurt me to kill people. It doesn't hurt me for a motherfucker to bleed out all over the fucking curb. I'm not the one fucking bleeding out all over the fucking curb." The call operator asked if the VA employee's children work at the pizza shop HADLEY works at. HADLEY responded, "Her fucking son does, and he just turned 18. He and her know and everyone else knows that I've been waiting for him to turn 18 because I want to knock his fucking teeth down her throat, (corrects himself) his throat, that way she can kind of get the message too. She obviously doesn't give a fuck about her self-preservation. … Maybe when I fucking skull knock her fucking son and he learns to digest some fucking teeth. Maybe …inaudible… I'm tired of going the right route. I'm about to approach every avenue of this motherfucker I can." HADLEY then stated, "If I have to go Burt Nemier (referring to Marvin Heemeyer) with a fucking …inaudible… bulldozer through a fucking VA Healthcare system. I don't care. I don't. I'm fine with it." When the call operator attempted to determine what HADLEY wanted, he stated, "No, that's not what I want to hear. I want to hear someone is calling you in ten minutes, and your check is in the fucking mail. Please don't kill our fucking

4

employees. That's what I want to hear." In another recording from 4/6/2022, HADLEY told the call operator, "I have a lot of intent to hurt motherfuckers. It's a constant state of being. I am not opposed to it. I am a fan of it. I don't give a fuck." He then stated, "If I got to pistol whip motherfuckers into submission so fucking be it. I know for a fact that it works. Motherfuckers go from durka durka durka …inaudible… jihad, when you put a 9mm in their fucking knee they speak English like they just graduated Harvard."

10. On or about October 19, 2022, Rogers Police issued a Be On The Lookout (BOLO) notice to area law enforcement noting HADLEY had threatened to "Take the officer's gun, shoot his estranged wife, Jamie Hadley, skin her, and turn her into a lamp." The BOLO noted HADLEY has training in hand-to-hand combat and has access to weapons.

11. On November 28, 2022, HADLEY contacted the VA Crisis Line, which is recorded, from telephone number 479-335-7166. I have reviewed the recording of this call. The Crisis Line employee was located in Canandaigua, NY at the time of the call. HADLEY communicated to the call operator that he was upset with a VA compensation worker named Shevaun Holmes. HADLEY named Holmes specifically and during the call HADLEY informed the call operator that he knew Holmes' residential address. (The address HADLEY reported was accurate.) HADLEY stated he would burn down Holmes' house, killing both Holmes and Holmes' children. HADLEY stated multiple times that he was serious, and he knew where she lived.

12. On November 28, 2022, the Federal Protection Service (FPS) was contacted regarding the threats HADLEY made on Holmes. FPS found that HADLEY had sent a text to a mutual friend of both HADLEY and Holmes named Phillip "King" Hendrix. The text contained a Google Earth image of Holmes personal residence and the message read "Fuck this bitch I

want to burn her house down. She wants to die anyway." FPS then found HADLEY had contacted the VA Crisis Line, which is recorded, and stated he was "coming to Colorado, armed to the teeth" for all individuals in his case. VA dispatch began "pinging" HADLEY's cell phone and noted HADLEY was travelling west through Arkansas. With this information, the VA police were under the assumption HADLEY could be actively travelling to Colorado. VA police coordinated with the local law enforcement agency for Holmes' residence and had them conduct a welfare check on her along with establishing roving patrols in her area.

13. HADLEY contacted the VA crisis line, which is recorded, on December 1, 2022, along with an unidentified individual who claimed to be HADLEY's "little brother". I have reviewed a recording of this call. During the call HADLEY stated, "Fix my shit or I will start killing people and myself. I'm at the end of my rope."

14. On December 3, 2022, the VA crisis line contacted HADLEY at 479-721-8213 and 479-335-7166 on a recorded line to attempt to provide support to him. The crisis line employee was located in Crewe, VA at the time of the call. I have reviewed a recording of this call. HADLEY again mentioned Holmes and claimed he knows her address. HADLEY confirmed to the crisis line employee he was having homicidal and suicidal thoughts. HADLEY then stated that he was pulling up Holmes' address. He then interrupted the crisis line employee and stated, "Listen here bitch. I will burn her fucking house down. She lives at ..." HADLEY then stated Holmes' address. The crisis line employee transferred the call to her supervisor, located in Topeka, KS at the time of the call. HADLEY told the supervisor that he would go to the VA and use Molotov cocktails to burn vehicles to the ground, "Including the squad cars the mother fucking pigs are sitting in." The supervisor told HADLEY she would need to send police to his location due to his comments of being homicidal and suicidal. HADLEY replied, "That's

6

fine. Send the cops over here for their death." The supervisor continued talking to him and HADLEY demanded he receive his compensation immediately. The supervisor informed HADLEY that due to it being a weekend, he would not receive the money immediately. HADLEY responded, "Monday morning, I better have a lot of fucking money in my fucking bank account or I'm going to start Molotoving cocktails at fucking VAs in random...ok." He then stated, "The whole homegrown terrorism that y'all and the VA and the government is worried about. This is how that is brewed." The supervisor asked HADLEY if he had loaded weapons in his home. He responded "Yes. Not loaded, but yes. I have weapons and ammo." The supervisor asked HADLEY how he would bomb the VA since he indicated he was intoxicated. HADLEY stated he would drive to the VA. He stated, "I come up there and I fucking zip tie a fucking road flare to a one-pound propane bottle and drop it off in cars. Solves my problems." The supervisor asked HADLEY how he felt about the other individuals he could harm in the process. HADLEY said he did not care and that, "Y'all used to pay me lots of money to kill people. I'm okay with taking lives." The supervisor asked HADLEY if he had everything he needed to bomb the VA. HADLEY stated, "You're goddamn right. You fuckers taught me how to make anything out of anything." HADLEY later stated, "If I fucking knock out a window of a fucking patrol car that sits out front and fucking put a Molotov cocktail on the window with a road flare and a fucking one-pound propane tank worm clamped to each other, then yes that's a different fucking story. Fuck 12."

15. On December 3, 2022, HADLEY posted a photo (shown below) to his Facebook account displaying a revolver handgun and two boxes of .38 special ammunition on the rear bumper of a white SUV that matches the description of the white Nissan Armada SUV that

HADLEY owns.



8

16. On January 11, 2023, HADLEY drove to the Fayetteville, VA Hospital. He proceeded to damage a VA police vehicle, multiple VA employee vehicles, parked and then went through the hospital destroying VA property before VA police were able detain him. Due to HADLEY's previous threats to bomb the VA, the University of Arkansas Police Department was asked to dispatch a bomb K9 to conduct a sniff of his vehicle.

17. On February 8, 2023, HADLEY arrived at the VA and caused a disturbance and further damage to VA property. He was cited by VA police and removed from the property.

18. On February 10, 2023, HADLEY arrived at the VA and caused further damage to the property. He was cited by VA police.

19. On February 16, 2023, HADLEY was arrested by the Rogers Police Department on charges of aggravated assault on a family or household member. The victim of the assault, Christine Meister, told officers on scene that HADLEY would leave for a week at a time to Colorado where she believed he has a storage unit filled with guns.

20. On February 23, 2023, Shevaun Holmes was interviewed by law enforcement. Holmes stated she was made aware of HADLEY's situation from a mutual friend of hers and HADLEY's, Phillip Hendrix. Hendrix is the owner of the pizza store HADLEY and Holmes' son worked at. Holmes stated she looked into HADLEY's situation and found there was nothing she was able to do for his complaint as there was nothing wrong with his account. Holmes recalled during the interview with law enforcement that when she asked if there was anything further she could help him with, HADLEY became upset. Holmes stated she received the first messages from HADLEY which she felt threatened by on September 24, 2022. On November 29, 2022, Hendrix told Holmes that HADLEY had sent a Google image of her house threatening to burn it

down (see picture below) via text message. Holmes was unaware of how HADLEY obtained her address.



21. AT&T Records indicate that HADLEY became the user of call number (479)335-7166, with International Mobile Subscriber Identity 310410317259336 on 4/20/2021. The account shows as active under HADLEY's name between 4/20/2021 and 4/21/2023.

22. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

23. Based on my training and experience, I know that AT&T can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

24. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

26. I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

27. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents

because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Eli Hobbs
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on October 10, 2023.

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (479) 335-7166, with International Mobile Subscriber Identity 310410317259336 ("the Account"), that are stored at premises controlled by AT&T ("the Provider"), headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the below listed time periods:

4/6/2022 between 12:00AM and 11:59P.M. (CDT)

11/28/2022 between 12:00A.M. and 11:59P.M. (CST)

12/1/2022 between 12:00A.M. and 11:59P.M. (CST)

12/3/2022 between 12:00A.M. and 11:59P.M. (CST)

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number

      ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

  vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

  viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

  i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

  ii. **information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received for the below listed dates and times:**

      1. **4/6/2022 between 12:00AM and 11:59P.M. (CDT)**

      2. **11/28/2022 between 12:00A.M. and 11:59P.M. (CST)**

      3. **12/1/2022 between 12:00A.M. and 11:59P.M. (CST)**

      4. **12/3/2022 between 12:00A.M. and 11:59P.M. (CST)**

  iii. **as well as per-call measurement data (also known as the "real-time tool" or "RTT" data, "Advanced Timing Data," "Per Call**

**Measurement" data, NELOS data, and/or "PCMD") for the below listed dates and times:**

1. 4/6/2022 between 1:00PM and 6:00P.M. (CDT)
2. 11/28/2022 between 11:00A.M. and 4:00P.M. (CST)
3. 12/3/2022 between 9:00A.M. and 1:00P.M. (CST)

## II. Information to be Seized by the Government

All information described above in Section I that constitutes [evidence, fruits, contraband, and instrumentalities] of violations of 18 U.S.C. § 875 (Interstate Communication) involving John HADLEY during the period 4/6/2022-Present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by AT&T, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of AT&T. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

 a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of AT&T, and they were made by AT&T as a regular practice; and

 b. such records were generated by AT&T's electronic process or system that produces an accurate result, to wit:

  1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of AT&T in a manner to ensure that they are true duplicates of the original records; and

  2. the process or system is regularly verified by AT&T, and at all times pertinent to the records certified here the process and system functioned properly and normally.

      I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____   _____
Date                                       Signature